**FILIPOWICZ v. ROTHENSIES, Collector of Internal Revenue, et al.**
**Civil No. 592.**

District Court, E. D. Pennsylvania.
Feb. 13, 1942.

Jerome L. Markovitz, of Kraus & Weyl, of Philadelphia, Pa., for plaintiff.

Arthur L. Jacobs, Sp. Asst. to Atty. Gen., and Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa., for defendant Rothensies.

Herman Toll, of Philadelphia, Pa., for defendant Michalowski.

Herman Toll, of Philadelphia, Pa., for defendant Toll.

Jerome L. Markovitz, of Philadelphia, Pa., for defendant Amalgamated.

KALODNER, District Judge.

This case was begun by a petition for declaratory judgment, seeking an adjudication by this court as to the proper distribution of a certain fund paid into the Registry of the Court. The Collector of Internal Revenue claims a lien on the fund for social security taxes, interest and penalties.

Subsequent to the filing of the petition for declaratory judgment, a motion to dismiss was filed on behalf of the Collector. On February 16, 1940, I granted the motion to dismiss (31 F.Supp. 716) on the ground that the complaint failed to allege that the government's lien was not established prior to the assignment upon which the plaintiff's claim is based. Subsequently, the plaintiff filed a motion to amend his petition for declaratory judgment. This motion was granted, and an amended petition was filed. An answer to the amended petition was then filed on behalf of the Collector of Internal Revenue.

Leave to intervene was granted to Amalgamated Clothing Workers of America, named in the written assignment as trustee for the plaintiff and other employees.

Further, Herman Toll, counsel for United Coat Shop, who filed and prosecuted the claim in bankruptcy which resulted in the collection of the fund paid into the Registry, in an answer which he filed, seeks payment to him of $36.93 as his fee out of the fund.

A jury trial was waived and the case was heard before the court on the pleadings and stipulation of facts, together with additional testimony.

### Findings of Fact.

The stipulated statement of facts (filed November 11, 1941), which is hereby adopted as the findings of fact of this court, is as follows:

1. For some time prior to June, 1938, defendants J. Michalowski and Charles Jasecki, trading as United Coat Shop, and hereinafter so-called, were engaged in carrying on various operations and work on garments owned by manufacturers Harry Steinberg and Louis Steinberg, trading as Steinberg Brothers, and hereinafter so-called.

2. On February 15, 1938, Steinberg Brothers filed a petition under Section 74 of the Bankruptcy Act, 11 U.S.C.A. § 202, in this court and subsequently, on April 8, 1938, were adjudicated a bankrupt in Bankruptcy Cause No. 20243. At the time of the filing of said petition, Steinberg Brothers were indebted to the United Coat Shop for the operations performed on its garments in the sum of $539.58. Said Steinberg Brothers ceased business after February 15, 1938. In June, 1938, the United Coat Shop was indebted to its employees for wages earned and unpaid in the sum of $2,680.58.

3. Defendant Herman Toll, as attorney for the United Coat Shop, filed on or about June 6, 1938, a written proof of debt in the aforesaid bankruptcy proceedings, No. 20243, against the bankrupt estate of Steinberg Brothers, a copy of which is attached to plaintiff's petition for declaratory judgment and is incorporated herein as if set out in haec verba.

4. On or about July 11, 1938, defendant Amalgamated Clothing Workers of America filed a petition for leave to intervene in the aforesaid bankruptcy proceedings, No. 20243, a copy of which petition is attached to the plaintiff's petition for

declaratory judgment as Exhibit 3 and is incorporated herein as if set out in haec verba.

5. On or about May 1, 1938, the United States Commissioner of Internal Revenue, hereinafter called the Commissioner, duly made an assessment of $191.10 against the United Coat Shop for taxes and interest thereon and penalties due from it under Titles VIII and IX of the Social Security Act, 42 U.S.C.A. §§ 1001 et seq., 1101 et seq. The assessment list containing this assessment was received by defendant W. J. Rothensies, Collector of Internal Revenue, on May 10, 1938. Defendant W. J. Rothensies, Collector of Internal Revenue, filed notices of liens arising by reason of this assessment with the Clerk of the United States District Court for the Eastern District of Pennsylvania, and with the Prothonotary of the Philadelphia County Court, on August 1, 1938.

6. On or about May 2, 1938, the Commissioner duly made an assessment of $583.-10 against the United Coat Shop for taxes and interest thereon and penalties due from it under Titles VIII and IX of the Social Security Act. Defendant W. J. Rothensies, Collector of Internal Revenue, received the assessment list containing this assessment on May 12, 1938. Defendant W. J. Rothensies, Collector of Internal Revenue, filed notices of liens arising by reason of this assessment with the Clerk of the United States District Court for the Eastern District of Pennsylvania, and with the Prothonotary of the Philadelphia County Court, on August 18, 1938.

7. On or about November 1, 1938, the Commissioner duly made an assessment against the United Coat Shop of $255.02, for additional taxes and interest thereon and penalties due from it under Titles VIII and IX of the Social Security Act. Defendant W. J. Rothensies, Collector of Internal Revenue, received the assessment list containing this assessment on November 10, 1938. Defendant W. J. Rothensies, Collector of Internal Revenue, filed notices of liens arising under this assessment with the Clerk of the United States District Court for the Eastern District of Pennsylvania, and with the Prothonotary of the Philadelphia County Court, on February 10, 1939.

8. On March 31, 1939, defendant W. J. Rothensies, Collector of Internal Revenue, served defendant Herman Toll with notice of lien, levy and warrant of distraint because of taxes due from the United Coat Shop under the aforesaid assessments in the aggregate amount of $1,059.94 on the property of said United Coat Shop.

In addition to the stipulated facts, the court makes the following special findings of fact:

9. On or about March 23, 1939, three dividends were paid in the bankrupt estate of the Messrs. Steinberg, by reason of which the defendant Toll received a total of $246.24 in three checks. While the defendant Toll was still in possession of the dividend checks, intending to transmit them to Kraus and Weyl (attorneys for the Union), he was served on March 31, 1939, by defendant W. J. Rothensies, Collector of Internal Revenue, with a notice of lien, levy, and warrant for distraint because of the indebtedness of defendants Michalowski and Jasecki to the United States of America for taxes, penalties, and interest amounting to $1,059.94.

10. In June, 1938, the defendants J. Michalowski and Charles Jasecki, trading as United Coat Shop, executed an assignment of the claims which they had against the bankrupt estates of S. Weiner and Sons and Steinberg Brothers to the Amalgamated Clothing Workers of America (the intervening party defendant) which assignment was in the following form:

"This Agreement, made this ——— day of June, 1938, by and between J. Michalowski and Charles Jasecki, trading as United Coat Shop, party of the first part (hereinafter called Michalowski), and Amalgamated Clothing Workers of America, party of the second part (hereinafter called Union). Witnesseth:

"1. Michalowski is indebted to numerous employees (who are members of Union) for wages earned and unpaid in the sum of $2,680.58, as shown by Exhibit A, attached hereto.

"2. Michalowski agrees to assign and hereby does assign, as collateral security, all its right, title and interest in any claim which it may have against the bankrupt estates of S. Wiener & Sons and Steinberg Bros., to Union, as Trustee for all of its wage earners to whom it is indebted in the aforesaid sum.

"3. Michalowski further agrees that commencing one week after it resumes production it will pay to Kraus & Weyl, Esquires, attorneys for Union as Trustee, the following sums to be held in escrow by the said Trustee and to be applied on ac-

count of the indebtedness as hereinbefore stated in paragraph 1:

"Michalowski will pay (in addition to the regular wages which it will pay to its employees) each week upon the following scale:

"For each coat manufactured, the sum of eight cents (8¢):

"For each coat manufactured over 200, the sum of nine cents (9¢):

"For each coat manufactured over 300, the sum of ten cents (10¢).

"4. The above assignments and payments are to constitute collateral security only, to insure payment of the wages now due. Union and Kraus & Weyl, Esquires assume no liability under this agreement except to see that any funds which may be deposited with them are paid to employees of Michalowski.

"5. The parties hereto agree to be legally bound by this agreement.

"In witness whereof, the parties hereto have duly executed this agreement the day and year first above written.

"J. Michalowski
"Charles Jasecki
    "Trading as United Coat Shop
    "By
    "(Signed)    J. Michalowski
"Amalgamated Clothing Workers
    of America
    "By
    "(Signed)    Charles Weinstein

"Witnesses:

"(Signed) Herman Toll"

(Note: List of employees, and wages due to each, including the plaintiff, was attached to the agreement as Exhibit A.)

11. Herman Toll, one of the defendants, acted as counsel in the filing and prosecution of the claim in bankruptcy against Steinberg Brothers, and subsequently upon the leave of this court paid the sum of $246.24 into the Registry of the Court with a request that his counsel fee in the amount of $36.93 be paid out of the Fund.

12. The sum of $36.93 is a reasonable counsel fee for services rendered by Herman Toll in filing and prosecuting the claim in bankruptcy against Steinberg Brothers and the creation of the Fund in controversy.

### Discussion.

The Collector of Internal Revenue has, in the instant proceeding, reiterated a number of legal objections to the validity of the plaintiff's claim and the jurisdiction of this court, which were previously disposed of by this court in the opinion filed on February 14, 1940, supra.

Since the latter opinion was filed, the United States Circuit Court of Appeals for this Circuit, in Rothensies v. Ullman et ux., 3 Cir., March 15, 1940, 110 F.2d 590, 592, specifically ruled, as I had, that Section 3653 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3653, does not operate to deprive the District Courts of the United States "of jurisdiction to restrain revenue officers from illegally collecting taxes out of property which does not belong to the person indebted to the government".

In the instant proceeding the crux of the controversy is the ownership of the Fund.

The principal issues now before the court, based upon the stipulated facts and additional testimony, are these:

(1) Is the action defective for want of proper parties defendant, in that the United States was not joined as a party defendant?

(2) Did the government establish a lien on the fund now in possession of the court or the property out of which the fund arose, prior to the assignment to the plaintiff?

(3) Is the government's lien valid as against the plaintiff despite the fact that notice thereof was not filed until after the date of the assignment?

As to the first question—Is the action defective for want of proper parties defendant, in that the United States was not joined as a party defendant:

That question must be answered in the negative. Counsel for the Collector has cited the following cases: Czieslik v. Burnet, D.C., 57 F.2d 715; Stafford Mills v. White, D.C., 41 F.2d 58; Maryland Casualty Co. v. Charleston Lead Works, D.C., 24 F.2d 836; United States v. Alabama, 313 U.S. 274, 282, 61 S.Ct. 1011, 85 L.Ed. 1327; United States v. Henry, D.C.E.D. Pa., 43 F.Supp. 617, decided September 1, 1939.

These cases are inapplicable to the instant controversy. They involved actions by alleged delinquent taxpayers for the extinguishment of liens. They did not involve any controversy over the ownership of the property against which the lien was filed.

As to the second and third questions: The stipulation of facts (paragraphs 5 and 6) discloses that the assessments of social security taxes including interest and penalties totaling $774.20 were made by the Commissioner of Internal Revenue on May 1 and 2, 1938, and that the assessment lists containing these assessments were received by the Collector on May 10 and 12, 1938.

The record also discloses that it was in the following month, June, 1938, that the United Coat Shop assigned its claim against the bankrupt estate of Steinberg Bros. to the Amalgamated Clothing Workers of America (paragraph 10, findings of fact).

■ It is clear that under the provisions of the Internal Revenue Code the government's lien became effective as to the indebtedness owing by the bankrupt estate of Steinberg Bros. to the United Coat Shop on May 10, 1938, and May 12, 1938, the dates upon which the assessment lists containing the assessments were received by the Collector.

My ruling as to the effective dates of the liens is based upon Sections 3670 and 3671 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, §§ 3670, 3671, derived from Section 3186(a) of the Revised Statutes, as amended by Section 613(a) of the Revenue Act of 1928:

"§ 3670. Property subject to lien

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person. 53 Stat. 448."

"§ 3671. Period of lien

"Unless another date is specifically fixed by law, the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time. 53 Stat. 449."

The Internal Revenue Code (adopted February 10, 1939) made no change in the above quoted provisions which were found in Section 3186(a) of the Revised Statutes.

It is to be noted that Section 3671 specifically provides that " * * * the lien shall arise at the time the assessment list was received by the collector * * *."

■ The above stated provisions with respect to the effective date of liens for Federal taxes have been considered in several recent cases, and it is generally agreed that the language of Section 3671 is to be interpreted literally—that is, the lien arises at the time the assessment list is received by the Collector: Citizens State Bank of Barstow, Texas v. Vidal, 10 Cir., 114 F.2d 380; United States v. Beaver Run Coal Company, 3 Cir., 99 F.2d 610. In the latter case the court reviewed the history of the Federal tax lien statutes, and it is there pointed out that prior to 1913 even bona fide purchasers of property were not protected as against a lien for Federal taxes, irrespective of lack of notice. Subsequently, the Federal tax lien statutes were amended by Section 3672 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev. Code, § 3672, to protect mortgagees, pledgees, purchasers and judgment creditors where proper notice of the lien was not given as provided by the statutes.

The requirements as to notice of the lien as applicable to the present case are contained in Section 3672 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 3672, derived from Section 3186(b), Revised Statutes, as amended by Section 613 (a), Revenue Act of 1928, and the Act of June 25, 1936:

"§ 3672. Validity against mortgagees, pledgees, purchasers, and judgment creditors

"(a) Invalidity of lien without notice. Such lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector—

"(1) Under State or Territorial laws. In accordance with the law of the State or Territory in which the property subject to the lien is situated, whenever the State or Territory has by law provided for the filing of such notice; or

"(2) With clerk of district court. In the office of the clerk of the United States district court for the judicial district in which the property subject to the lien is situated, whenever the State or Territory has not by law provided for the filing of such notice; or

"(3) With clerk of District Court of the United States for the District of Co-

lumbia. In the office of the clerk of the District Court of the United States for the District of Columbia, if the property subject to the lien is situated in the District of Columbia."

In order to take advantage of the fact that the lien was not filed until August 1, 1938, and that notice of the lien was not given by the Collector until March 31, 1939, the assignee would have to establish that he comes within the provisions of Section 3672(a); in other words, he would have to prove himself to be a mortgagee, pledgee, purchaser, or judgment creditor.

The assignee does not, in the instant case, come within any of the categories described in Section 3672(a). The assignment in June, 1938, was for a past due consideration—wages already earned. It has been held that a pledgee who receives property as security for a pre-existing debt is not considered a purchaser within the recording acts: See 51 C.J. p. 99, note 35 (h).

In Goodwin Gas Stove and Meter Company's Assigned Estate, 166 Pa. 296, 299, 31 A. 91, 92, it was held that an assignee for the benefit of creditors is not a "purchaser" within the meaning of the Pennsylvania lien recording laws. Said the court: "* * * If the commonwealth's claim attached to the property in his possession, as it undoubtedly did, he could not divest it by making an assignment for the benefit of creditors. That an assignee for the benefit of creditors is not a 'purchaser,' within the meaning of the word which protects lien creditors or vendees for value, is familiar law. Neither the rights of the assignee, nor those of the general creditors could rise higher than those of the assignor, and, as the property was subject to the commonwealth's lien in his hands, it remained subject to it in the hands of the assignee; and, inasmuch as the fund distributed arises from the sale of that property, the lien attaches to the proceeds as firmly as it did to the property itself in the hands of the debtor."

■ The decisions establish that it is the burden of the plaintiff to prove that he comes within the class of "mortgagee, pledgee, purchaser, or judgment creditor": See MacKenzie v. United States, 9 Cir., 109 F.2d 540. In that case the court held that a prior tax lien prevailed over an attachment, even though notice of the tax lien was filed after the attachment.

[5] For the reasons stated, I rule that the government's lien became effective to the extent of the sum of $774.20 in May of 1938 prior to the assignment of the claim against Steinberg Bros. to the plaintiff, and that the notice provisions of the Statutes dealing with liens did not in any manner invalidate the lien as against the plaintiff and the Union, the assignees.

■ Since the amount paid into Court ($246.24), being the Fund which arose from the claims in bankruptcy, was less than the amount of the government liens ($774.20), the Collector of Internal Revenue is entitled to have the fund turned over to him, diminished only by the amount of $36.93, which is the amount of attorney's fee payable to Herman Toll, who performed services in the creation of the Fund, and subject also to the payment out of this Fund of the costs of the present proceeding, which the Court directs to be paid out of the Fund.

■ I base my ruling that the attorney's fee should be paid out of the Fund involved in this proceeding upon the well recognized principle that an attorney has a lien on a fund which has been created as a result of his efforts in litigation: Sprague v. Ticonic Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184; Harris's Appeal (Jacoby's Appeal), 323 Pa. 124, 125, 186 A. 92.

The Supreme Court of Pennsylvania, in Harris's Appeal (Jacoby's Appeal), supra, succinctly stated the policy of the courts to sustain an award of reasonable counsel fee and costs to an attorney whose services have helped to produce the Fund (323 Pa. page 128, 186 A. page 94): "If a principle in law or equity can be found to sustain an award of reasonable counsel fee and costs to the owner's attorney, who litigated the compensation dispute and whose services helped produce the fund, it ought to be applied."

### Conclusions of Law.

On the facts found I conclude as a matter of law:

1. The United States of America has liens for taxes, interest and penalties in the total sum of $774.20 against the property of J. Michalowski and Charles Jasecki, trading as United Coat Shop, which liens were effective on May 10 and 12, 1938.

2. As of May 10 and 12, 1938, the said defendants, J. Michalowski and Charles Jasecki, trading as United Coat Shop, were

the owners of a certain chose in action in the form of indebtedness owing by Steinberg Bros., which debtor had filed a Petition in Bankruptcy under Section 74 of the Bankruptcy Act, 11 U.S.C.A. § 202, on February 15, 1938.

3. On May 10 and 12, 1938, the liens of the United States for the said Social Security taxes, interest and penalties became effective as against the said indebtedness owing by the bankrupt, Steinberg Bros., to J. Michalowski and Charles Jasecki, trading as United Coat Shop.

4. The assignment of the claim against Steinberg Bros. by United Coat Shop to Amalgamated Clothing Workers of America in June, 1938, was subject to the liens of the United States for the said Social Security taxes, interest and penalties.

5. The plaintiff Filipowicz (and/or the Union) was not a mortgagee, pledgee, purchaser or judgment creditor with respect to the said assigned indebtedness and the fact that notice of the lien had not been filed at the time of the assignment did not give the plaintiff a superior right to the proceeds of the claim as against the liens of the United States for the said taxes.

6. The Fund which has now been paid into the Registry of the Court, and which fund arose from the said claim in bankruptcy, is impressed with the said liens in favor of the United States for the said taxes, interest and penalties, totaling $774.-20.

7. Herman Toll, one of the defendants, having rendered services as an attorney in the filing and prosecution of the claim against the bankrupt estate, which resulted in the creation of the Fund, is entitled to payment in full of his fee in the amount of $36.93, which is reasonable compensation for his services.

8. The said Fund shall be distributed in the following manner:

(a) For the payment of the proper costs of this proceeding.

(b) To Herman Toll, attorney fee, $36.-93.

(c) The balance of the fund is to be paid over to W. J. Rothensies, Collector of Internal Revenue, First District of Pennsylvania, to be applied on account of the payment of the said social security taxes, interest and penalties.

An order for judgment may be submitted in accordance with this opinion.