Lucile McAulay FILIPPINI, as Executrix of the Last Will and Testament of Carra McAulay, Deceased, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17847.

United States Court of Appeals Ninth Circuit.

June 12, 1963.

Clausen & St. Clair and Henry C. Clausen, San Francisco, Cal., for appellant.

Cecil F. Poole, U. S. Atty., and Richard L. Carico, Asst. U. S. Atty., San Francisco, Cal., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson and Arthur E. Strout, Attys., Dept. of Justice, Washington, D. C., for appellee.

Before ORR, MERRILL and BROWNING, Circuit Judges.

BROWNING, Circuit Judge.

Taxpayer sought to recover income tax paid on the gain resulting from a condemnation award, on the ground that the property which she had purchased to replace the condemned property was "similar or related in service or use to the [condemned] property" within the meaning of Section 112(f) (3) (A) of the Internal Revenue Code of 1939,[1] and the gain therefore qualified for non-rec-

1. Taxes for the year 1953 are involved.

ognition.[2] The District Court denied relief.

Six Courts of Appeals have recently considered the application of Section 112 (f) (3) (A) of the 1939 Code (or the identical language of Section 1033(a) (3) (A) of the 1954 Code), to taxpayers who, like the taxpayer in the present case, leased both the condemned and the replacement property to others to produce rental income.[3] The relevant legal materials are fully explored in these decisions and in the opinion of the District Court in the present case, and we need not repeat that process here. In our view these materials support the following general conclusions.

▮▮▮▮ The purpose of the statute is to relieve the taxpayer of unanticipated tax liability arising from involuntary condemnation of his property, by freeing him from such liability to the extent that he re-establishes his prior commitment of capital within the period provided by the statute. The statute is to be liberally construed to accomplish this purpose. On the other hand, it was not intended to confer a gratuitous benefit upon the taxpayer by permitting him to utilize the involuntary interruption in the continuity of his investment to alter the nature of that investment tax free. Therefore, whether the acquired property is "similar or related in service or use" to the condemned property turns upon whether in all the circumstances it represents a substantial continuation of the taxpayer's prior commitment of capital, or a departure from it.

It would be fatuous to suggest that the recent decisions applying this standard to taxpayer-lessors are wholly consistent in approach or result. All of them except McCaffrey agree that since the statute is intended to relieve the taxpayer, the question of whether the condemned and replacement investments are similar must be determined from the taxpayer's relationship to each. The decisions vary in the emphasis which they place upon particular factors making up the totality of the taxpayer's relationship to the two investments.

▮▮▮▮ Where the taxpayer leases both properties to produce rental income it is clear enough that the physical uses to which the lessees put the property, although relevant, cannot be controlling. It is equally clear that the fact that the taxpayer leases both properties is not alone enough to justify non-recognition of the gain, for both properties might be leased yet represent materially different investments to the taxpayer-lessor. Nor do we think it is sufficient that both properties be leased, and be "reasonably similar" or of the "same general class." The problem cannot be resolved by rules of thumb.

▮▮▮▮ The test is a practical one. The trier of fact must determine from *all* the circumstances whether the taxpayer has achieved a sufficient continuity of investment to justify non-recognition of the gain, or whether the differences in the relationship of the taxpayer to the two investments are such as to compel the conclusion that he has taken advantage

---

2. The court's opinion (published at 200 F. Supp. 286) contains a detailed statement of the facts and legal issues.

   We agree with the District Court that the assessment was not barred by the statute of limitations, and that the portion of the condemnation award representing interest from date of taking to date of payment was taxable as ordinary income rather than as capital gain. We could add nothing useful to the District Court's discussion of these issues.

3. Capitol Motor Car Co. v. Commissioner, 314 F.2d 469 (6th Cir. 1963); Clifton Investment Co. v. Commissioner, 312 F. 2d 719 (6th Cir. 1963); Pohn v. Commissioner, 309 F.2d 427 (7th Cir. 1962); Loco Realty Co. v. Commissioner, 306 F.2d 207 (8th Cir. 1962), 65 W.Va.L.Rev. 171 (1963); Liant Record, Inc. v. Commissioner, 303 F.2d 326 (2d Cir. 1962); McCaffrey v. Commissioner, 275 F.2d 27 (3d Cir.1960); and Steuart Bros., Inc. v. Commissioner, 261 F.2d 580 (4th Cir. 1958), 19 Md.L.Rev. 268 (1959).

of the condemnation to alter the nature of his investment for his own purposes.[4]

■■■■ The broad range of the appropriate inquiry is suggested by Liant's enumeration of relevant factors as *including* "the extent and type of the lessor's management activity, the amount and kind of services rendered by him to the tenants, and the nature of his business risks connected with the properties."[5] Since the essential inquiry is whether the taxpayer has committed the condemnation award to a substantially equivalent investment, the relevant facts include all of those which would influence an investor in determining the attractiveness of the respective uses for his capital: the character and location of the particular properties, their potential and actual employment, the state of the market of which each is a part.[6] As Liant suggests and Clifton Investment emphasizes, the relevant facts also include the demands which the respective investments may make upon the taxpayer for supervision and service.

Two of the recent decisions (those in Steuart and McCaffrey) were announced prior to the trial in the present case. Appellant relied upon Steuart, interpreting it as holding that the use of the properties by the taxpayer controlled, that it was sufficient if the taxpayer leased both properties to others to produce rental income, and that the use to which the properties were put by the lessees was wholly irrelevant. Appellees relied upon McCaffrey, interpreting it as holding that the use to which the properties were put by the actual occupants controlled, and that the fact that both properties were used by the taxpayer-lessor to produce rental income was wholly irrelevant. Each party limited its evidence in accordance with its theory.

■■■■ The District Court rejected both positions. The court accurately analyzed the purposes of the statute. It properly formulated the test to be followed in applying the statute. Of necessity the court applied this test to the record made by the parties. The court gave full and proper consideration to all relevant factors established by the evidence, and arrived at a sound result based upon the available record. If the court's inquiry did not encompass the full range of facts relevant to a proper comparison of the two properties in relation to the taxpayer, it was only because the record was similarly limited. The court did not exclude any evidence offered. Since appellant bore the burden of proof, she cannot complain of any deficiency in the record itself.

Affirmed.

---

4. The language of the Supreme Court in Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 289, 80 S.Ct. 1190, 1198, 4 L.Ed.2d 1218 (1960), is pertinent here:

"Decision of the issue presented in these cases must be based ultimately on the application of the fact-finding tribunal's experience with the mainsprings of human conduct to the totality of the facts of each case. The nontechnical nature of the statutory standard, the close relationship of it to the data of practical human experience, and the multiplicity of relevant factual elements, with their various combinations, creating the necessity of ascribing the proper force to each, confirm us in our conclusion that primary weight in this area must be given to the conclusions of the trier of fact."

5. 303 F.2d at 329.

6. Cf. Judge Shackelford Miller, Jr., concurring in Clifton, 312 F.2d at 722–723.